1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CHARLES JAMES CHATMAN,              No. 2:11-CV-0681-MCE-CMK-P

12                    Plaintiff,

13          vs.                                    FINDINGS AND RECOMMENDATIONS

14   DAVID M. MEDINA, et al.,

15                    Defendants.

16   _____/

17             Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the court are defendants' motions to dismiss (Docs. 27 and

19   38) arguing that plaintiff fails to state claims upon which relief can be granted and that some

20   claims are unexhausted.

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

# I.  PLAINTIFF'S ALLEGATIONS

This action proceeds on the first amended complaint.  Plaintiff names the following 32 individuals as defendants: (1) D. Medina, physician assistant; (2) D. Swingle, chief medical officer; (3) J. Nepomuceno, chief physician and surgeon; (4) R. Lankford, chief physician and surgeon; (5) C.K. Harvey, podiatrist; (6) J. Clark, registered nurse; (7) L. Hackworth, registered nurse; (8) W. Davis, licensed vocational nurse; (9) M.D. McDonald, warden; (10) T. Perez, associate warden; (11) R. Plainer, lieutenant; (12) A. Amero, lieutenant; (13) C. Lewis, lieutenant; (14) R. Ingwerson, lieutenant; (15) D. Sisson, lieutenant; (16) G. Spears, sergeant; (17) J. Quiring, sergeant; (18) S. Head, sergeant; (19) A. Audette, sergeant; (20) M. Urquizu, sergeant; (21) C. Nelson, correctional officer; (22) Ginder, correctional officer; (23) K. Lowther, correctional officer; (24) D. Probst, correctional officer; (25) A. Gorby, correctional officer; (26) J. Kirkland, correctional officer; (27) D. Hitchcock, correctional officer; (28) A. Pickens, correctional officer; (29) B. Fleming, correctional officer; (30) G. Brackett, correctional officer; (31) J. White, correctional officer; and (32) A. Burke, correctional officer.[1]

Plaintiff claims that, in July 2008, defendants Kirkland, Gorby, Pickens, and Hitchcock harassed him.  When plaintiff complained about the harassment, these defendants "regularly put juice and milk cartons in his food, while satu[r]ating it with water during a 41 day period."  Plaintiff states that defendants McDonald, Perez, Plainer, Head, and Quiring were reluctant to get involved.  Plaintiff claims that he lost 35 pounds as a result of his refusal to eat what he characterizes as "tainted food."

/ / /

/ / /

---

[1]     Defendants Amero, Audette, Brackett, Burke, Clark, Fleming, Ginder, Gorby, Hackworth, Harvey, Head, Hitchcock, Ingwerson, Kirkland, Lewis, Lowther, McDonald, Nelson, Nepomuceno, Perez, Pickens, Plainer, Probst, Quiring, Sisson, Spears, Swingle, Urquizu, and White appear by way of their motion to dismiss.  Defendant Lankford appears by his separate motion to dismiss.  Defendants Davis and Medina have not been served.

Plaintiff alleges that defendants Ingwerson and Quiring confiscated and destroyed his legal/confidential correspondence, stationary, stamps, family pictures, shower slippers, magazines, and prescribed medications and other health-related devices (i.e., glasses).  According to plaintiff, defendants McDonald and Perez refused to get involved.

Plaintiff states that, on October 9, 2008, he was extracted from his cell by defendant Pickens and another correctional officer via the use of pepper spray.  The cell extraction was performed at the order of defendants Ingwerson and Quiring.  According to plaintiff, after the pepper spray was washed off, "Defendant Clark ordered defendant Pickens and C/O Rossie to drag Plaintiff's naked body on the floor at a distance of 30 yards to an awaiting cell, then back to his cell while handcuffed behind his back."  Even though pepper spray was still present in his cell, plaintiff states that he was put back in his cell, still naked, by defendants Ingwerson, Quiring, Nelson, Pickens, and Lowther and not provided clothing, linens, a mattress, soap, his medications, or toilet paper for ten days.  Plaintiff also alleges that these defendants turned off his water supply "due to him filing complaints."

Next, plaintiff claims that, on October 27, 2008, he was discharged from Banner Medical Center and was returned to his housing unit by wheelchair.  Plaintiff states that defendant Lowther ordered him to "get out the wheelchair and walk to his cell."  When plaintiff responded that he couldn't walk, defendants Lowther, Quiring, and Nelson forced him out of the wheelchair by grabbing plaintiff's neck from behind.  According to plaintiff, he was then "body slammed on the floor face down."  Thereafter, according to plaintiff, his ankles were shackled and these defendants placed him in a 7' by 2' cage where he remained for four hours in waistchains, only his underwear, and with no shoes.  He states that during this time "the outside door opened for him to freeze."  Plaintiff claims that defendant Sisson coordinated the incident then, along with defendants Lowther and Nelson, "falsified documents to reflect a different story."

/ / /

1    Plaintiff next asserts that after filing grievances against defendant Kirkland for

2    food tampering, defendant Kirkland retaliated against him by destroying his outgoing

3    legal/confidential mail addressed to various government agencies.  According to plaintiff, this

4    occurred between August 7, 2008, and September 7, 2008 and involved the "disappearance of

5    dozens of his official correspondences."  When informed of the problem, defendants Plainer,

6    Head, Spears, Quiring, McDonald, and Perez refused to intervene.

7    Next, plaintiff claims that on October 29, 2008, he was unconscious in his bed and

8    was being punched repeatedly in his stomach "until he'd awakened by Defendants' Nelson and

9    Ginder, as Defendants Head and Clark stood in the cell watching."

10   Plaintiff alleges that in April 2009 he was accosted by Defendant Probst, "who

11   expressed hostility for Plaintiff filing a grievance against Sergeant K. Harper."  Plaintiff states

12   that, as he was walking away, defendant Probst "snatched the laundry bag out of Plaintiff's left

13   hand with brute force, which caused his thumb to swell."  Thereafter, defendant Probst

14   threatened plaintiff's life.

15   Plaintiff claims that, on April 26, 2010, the dayroom in his housing unit was

16   "raided by dozens of custody staff who were yelling and pointing 40 mm grenade launchers at

17   everyone to lay on their stomach."  As he was on his stomach, defendant Fleming approached.

18   Plaintiff told Fleming that he needed a waistchain (presumably instead of handcuffs) for medical

19   purposes.  According to plaintiff, Fleming told plaintiff that he remembered him as "the asshole

20   who sued him."  Plaintiff states that Fleming then "stood on top of his back."  Plaintiff claims

21   that, after this, defendant Brackett "dragged Plaintiff across the dayroom floor by his ankles."

22   According to plaintiff, defendant Amero, Lewis, Audette, and Urquizu "stood watching and told

23   Plaintiff to shut up when he'd cried out in pain, and need for medical attention."  Plaintiff states

24   that, whereas all the other inmates were returned to their cells, he was left alone in pain for over

25   an hour as punishment.  Plaintiff also states that, during this time, defendants Amero, Lewis,

26   Audette, and Urquizu directed defendants Fleming and Brackett to confiscate all of plaintiff's

1    court documents, stationary, "intellectual property," pictures, books, and personal

2    correspondence.  When his property was returned over a month later, one third of his

3    "intellectual property" was missing, as was all of his stationary and correspondence from state

4    officials and "evidence in different court actions."  Plaintiff claims that defendant Brackett

5    falsified documents to reflect a different series of events.

6            Plaintiff asserts that defendant Clark refused to acknowledge his complaints of

7    back, shoulder, thumb, and left foot pain following an assault by custody staff.  He claims that

8    Clark simply disposed of sick slips he submitted rather than routing them to the medical clinic.

9    Plaintiff also claims that defendant Clark "routinely put false information in Plaintiff's medical

10   records to reflect that nothing was wrong with him or his need for having a waistchain chrono."

11   Plaintiff alleges that defendant Medina also refused to treat his injuries sustained in a staff

12   assault.  Plaintiff further alleges that Medina retaliated against him "by confiscating Plaintiff's

13   prescribed orthopedic boots, mobility impaired vest and cane, while discontinuing his ADA

14   status."  Plaintiff next claims that defendant Medina falsified medical records to reflect that

15   plaintiff was seen walking without his cane, and then "solicited the signatures of Defendants'

16   White, Burke, and Hackworth to support his fabricated claim."  He also states that defendant

17   Nepomuceno "co-signed a fabricated chrono authored by Defendant Medina, which took away

18   Plaintiff's orthopedic boots, mobility impaired vest, cane, and ADA status. . . ."  Plaintiff adds

19   that this was ratified by defendant Swingle after the situation was brought to her attention.  He

20   also claims that, when interviewed about the incident by defendant Lankford, "he [Lankford]

21   falsified documents by saying that he examined Plaintiff and that his foot was found to be

22   normal, but never provided a medical report of his alleged examination."  After filing a grievance

23   concerning all this, plaintiff states that defendant Swingle and Lankford retaliated by denying

24   him medical care for his left foot.

25   / / /

26   / / /

1       Plaintiff states that he was interviewed by defendant Harvey about his foot

2   problems.  According to plaintiff, Harvey "expressed hostility towards him [plaintiff] for filing a

3   previous civil complaint against her, while saying that his medical record indicate he was a pain

4   in the ass."  Plaintiff states that Harvey administered two shots for his foot pain but that he was

5   still in pain.  When plaintiff complained of continued foot pain, Harvey kicked him out of her

6   office and said his condition was beyond her expertise.  When asked if Harvey would refer him

7   to another doctor, plaintiff states that she said she would provided plaintiff dropped his civil suit

8   against her. Plaintiff alleges that, when he refused, Harvey "denied him additional medical care

9   as a retaliatory act."

10      Finally, plaintiff claims that, after a staff assault in April 2010, defendant Davis

11  was summoned to his housing unit to examine him incident to complaints of pain in his low

12  back, left foot, shoulder, and left leg.  According to plaintiff, instead of examining him, Davis

13  refused, stating that defendant Clark and custody staff told her not to examine him or write down

14  his complaint.

15      Based on the factual allegations outlined above, plaintiff asserts the following

16  legal theories of liability:

17          Count One          Defendants Kirkland, Gorby, Pickens, Spears, and
                               Hitchcock violated plaintiff's constitutional rights under the
18                             First and Eighth Amendments, by putting foreign objects in
                               his food.
19
            Count Two          Defendants Plainer, Head, Quiring, McDonald, and Perez
20                             violated plaintiff's constitutional rights under the First and
                               Eighth Amendments, for allowing their subordinates to put
21                             foreign objects in his food.

22          Count Three        Defendants Ingwerson, Quiring, and Head violated
                               plaintiff's constitutional rights under the First, Eighth, and
23                             Fourteenth Amendments, by confiscating and destroying
                               his confidential correspondences, medication, property, and
24                             medical devices, as a retaliatory act.

25  ///

26  ///

Count Four — Defendants McDonald and Perez violated plaintiff's constitutional rights under the First, Eighth, and Fourteenth Amendments, by allowing their subordinates to confiscate and destroy his confidential correspondences, medications, property, and medical devices.

Count Five — Defendants Ingwerson, Quiring, Pickens, and Clark violated plaintiff's constitutional rights under the Eighth Amendment, by subjecting him to be dragged naked on the floor, while he was in restraints.

Count Six — Defendants Ingwerson, Quiring, Nelson, Pickens, and Lowther violated plaintiff's constitutional rights under the Eighth and Fourteenth Amendments, by subjecting him to a pepper spray cell for ten days naked, with no water, hygiene, linen, mattress, toilet paper, and prescribed medication.

Count Seven — Defendants Sisson, Lowther, Nelson, and Quiring violated plaintiff's constitutional rights under the First, Eighth, and Fourteenth Amendments, by subjecting him to excessive force, inclement weather, and unnecessary restraints, while they falsified records.

Count Eight — Defendant Kirkland violated plaintiff's constitutional rights under the First Amendment, by confiscating and destroying his outgoing legal mail, as a retaliatory act.

Count Nine — Defendants Plainer, Head, Quiring, Spears, Perez, and McDonald violated plaintiff's constitutional rights under the First Amendment, by allowing their subordinate to confiscate and destroy his outgoing legal mail.

Count Ten — Defendants Head, Nelson, Clark, and Ginder violated plaintiff's constitutional rights under the First and Eighth Amendments, by subjecting him to being punched in the stomach repeatedly and the use of improper restraints, as a retaliatory act.

Count Eleven — Defendant Probst violated plaintiff's constitutional rights under the First and Eighth Amendments, by assaulting him, as a retaliatory act.

Count Twelve — Defendants Fleming, Amero, Brackett, Lewis, Audette, and Urquizu violated plaintiff's constitutional rights under the First and Eighth Amendments, by subjecting him to excessive force and property theft, while denying him medical care.

///

7

| | | |
|---|---|---|
| Count Thirteen | | Defendants Clark and Davis violated plaintiff's constitutional rights under the First and Eighth Amendments, by refusing to examine him after being assaulted by staff, as a retaliatory act. |
| Count Fourteen | | Defendants Medina, Nepomuceno, Lankford, Harvey, and Swingle violated plaintiff's constitutional rights under the First and Eighth Amendments, by denying him medical care and falsifying his medical records, as a retaliatory act. |
| Count Fifteen | | Defendants White, Burke, and Hackworth violated plaintiff's constitutional rights under the First Amendment, by falsifying his medical record, as a retaliatory act in support of their peers. |

## II.  STANDARDS FOR MOTION TO DISMISS

### A.  Failure to State a Claim

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic

1 recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

2 raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain

3 "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has

4 facial plausibility when the plaintiff pleads factual content that allows the court to draw the

5 reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at

6 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

7 than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

8 at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

9 it 'stops short of the line between possibility and plausibility for entitlement to relief." Id.

10 (quoting Twombly, 550 U.S. at 557).

11       In deciding a Rule 12(b)(6) motion, the court generally may not consider materials

12 outside the complaint. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v.

13 Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents

14 whose contents are alleged in or attached to the complaint and whose authenticity no party

15 questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and

16 upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee

17 v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials the

18 court may judicially notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

19       Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

20 amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

21 curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

22    **B.**   **Exhaustion**

23       A motion to dismiss based on a prisoner's failure to exhaust administrative

24 remedies is properly the subject of an unenumerated motion under Federal Rule of Civil

25 Procedure 12(b). See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a

26 motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the

9

1   pleadings and decide disputed issues of fact." Id. at 1119-20.  Where the court looks beyond the

2   pleadings to a factual record in deciding the motion to dismiss, which is ". . . a procedure closely

3   analogous to summary judgment," the court must assure that the plaintiff has fair notice of his

4   opportunity to develop a record.  Id. at 1120 n.14 (referencing the notice requirements outlined in

5   Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d

6   409 (9th Cir. 1988).  Defendants bear the burden of establishing that the plaintiff failed to

7   exhaust administrative remedies prior to filing suit.  See Wyatt, 315 F.3d at 1120.  If the court

8   concludes that administrative remedies have not been exhausted, the unexhausted claim should

9   be dismissed without prejudice.  See id. at 1120; see also Jones v. Bock, 127 S.Ct. 910 (2007).

10

11                               **III.  DISCUSSION**

12           In their motion to dismiss, defendants argue: (1) a number of claims are

13   unexhausted and should be dismissed; (2) plaintiff has failed to state a claim against supervisory

14   defendants Spears, McDonald, Perez, Plainer, Head, Quiring, Amero, Lewis, Audette, and

15   Urquizu; (3) plaintiff has failed to state a retaliation claim against any defendant because he has

16   neither alleged that his First Amendment rights were chilled nor that defendants' conduct did not

17   serve a legitimate correctional goal; and (4) plaintiff has stated no facts to support a conspiracy

18   claim.  In his separate motion to dismiss, defendant Lankford argues:

19                   Plaintiff Charles Chatman . . . claims that Dr. Lankford violated his
             rights under the Eighth Amendment by denying his medical care and
20           falsifying his medical records, and violated his rights under the First
             Amendment by committing those acts in response to Chatman's filing of
21           an inmate grievance.
                     The Court should grant this motion to dismiss under Federal Rule
22           of Civil Procedure 12(b)(6) because: (1) Chatman failed to allege facts
             showing that his First Amendment rights were chilled and that Dr.
23           Lankford's acts did not reasonably advance a correctional goal – essential
             elements of a retaliation claim under the First Amendment; and (2)
24           Chatman failed to allege facts showing he suffered from a serious medical
             need, Dr. Lankford knew about that need, and Dr. Lankford failed to take
25           steps to abate it – essential elements for a deliberate indifference claim
             under the Eighth Amendment.

26

1   **A.      Conspiracy**

2          Plaintiff alleges at various points in the amended complaint that certain

3   defendants conspired with one another to deny him his rights.  Specifically, plaintiff claims that:

4   (1) defendants Kirkland, Gorby, Pickens, Hitchcock, and Spears conspired to tamper with his

5   food; (2) defendants Ingwerson, Quiring, and Head conspired to destroy his property; and

6   (3) defendants White, Hackworth, and Medina conspired to falsify plaintiff's medical records.

7   Plaintiff does not allege any specific facts showing a meeting of the minds between or among any

8   defendants, see Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998), and the court agrees with

9   defendants that plaintiff's bare allegations that defendants conspired with one another are

10  insufficient to state a claim, see Harris v. Roderick, 126 F.3d 1189, 1195 (9th Cir. 1997).

11         While plaintiff filed an opposition to defendants' motions, he does not address

12  this argument.  Given plaintiff's failure to address defendants' argument regarding the

13  insufficiency of his bare conspiracy allegations, it does not appear that leave to amend to allege

14  more specific facts is warranted.  All of plaintiff's conspiracy claims should be dismissed with

15  prejudice.

16  **B.      Supervisory Liability**

17         Supervisory personnel are generally not liable under § 1983 for the actions of their

18  employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

19  respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

20  violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

21  Supreme Court has rejected the notion that a supervisory defendant can be liable based on mere

22  knowledge of a subordinate's unconstitutional conduct because government officials, regardless

23  of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct

24  of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  Thus, where

25  knowledge of an alleged violation is alleged, the prisoner must also allege that the supervisory

26  defendant participated in or directed the violation or demonstrated "culpable indifference."  Starr

v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011) (discussing sufficiency of a prisoner's Eighth Amendment claim).  Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."  Iqbal, 129 S.Ct. at 1948.

Plaintiff claims that defendants McDonald and Perez were the prison warden and associate warden, respectively.  He also claims that defendants Amero, Plainer, Lewis, Ingwerson, Sisson, Spears, Quiring, Head, Audette, and Urquizu were "supervising custodial officers."  Additionally, plaintiff claims that defendant Swingle was the chief medical officer and that defendants Nepomuceno and Lankford were "Chief Physicians & Surgeons."  Defendants identify four portions of the amended complaint which, according to them, do not allege facts sufficient to support "claims premised on supervisor liability."  According to defendants:

> In his Complaint, Chatman alleges the following claims based on supervisor liability:
>
> • During the food tampering incident in July 2008, Spears was present on most occasions and "allowed the food tampering to occur."  Chatman also alleges he complained about the food tampering to McDonald, Perez, Plainer, Head, and Quiring, who all "expressed their reluctance to get involved."  (Compl. ¶¶ 15-16).
>
> • During the property confiscation incident in November 2008, Chatman alleges McDonald and Perez informed Chatman they "were not going to get involved" and to "stop bothering them." (Compl. ¶ 20).

1
2
3

- During the property confiscation incident in December 2008, Chatman alleges he informed Plainer, Head, Spears, Quiring, McDonald, and Perez about the alleged mail interception by Kirkland.  These defendants told Chatman they did not want to be involved.  (Compl. ¶ 31).

4
5
6

- During the "dayroom" raid incident on April 26, 2010, Chatman claims Amero, Lewis, Audette, and Urquizu stood watching during the raid.  He also claims they told him to "shut up" when he asked for medical attention.  (Compl. ¶ 42).

7   Defendants argue: "Here, Chatman's complaint in no way sets forth facts, even when liberally

8   construed, to support individualized constitutional claims against McDonald, Perez, Plainer,

9   Head, Quiring, Spears, Amero, Lewis, Audette, or Urquizu."[2]

10           The court does not agree.  In paragraph 15 of the amended complaint, plaintiff

11   alleges that defendant Spears was present when the alleged food tampering occurred and that he

12   allowed the tampering to occur.  These allegations are sufficient to show Spears' own personal

13   involvement by way of his knowledge of what was occurring and his culpable indifference to the

14   food tampering.  In other words, defendant Spears' alleged failure to act indicates his deliberate

15   indifference to plaintiff's health and safety and forms the basis of liability.  Spears is not alleged

16   to be liable merely because of his knowledge, but also because of his own inaction.

17           In paragraph 16, plaintiff claims that defendants McDonald, Perez, Plainer, Head,

18   and Quiring knew about the alleged food tampering but would not get involved "as plaintiff lost

19   35 lbs. from refusing to eat tainted food."  Construed liberally, as plaintiff's allegations must be,

20   plaintiff is referring to ongoing food tampering in July 2008 and alleges that these defendants

21   knew of the ongoing tampering but failed to act to stop it and that, during this time, plaintiff lost

22   35 pounds.  As with defendant Spears, the court finds that plaintiff's allegations are sufficient to

23   show that defendants McDonald, Perez, Plainer, Head, and Quiring had knowledge of the food

24   tampering and, despite that knowledge, were culpably indifferent to plaintiff's health and safety.

25

26           [2]      Though they are also alleged to hold supervisory positions, defendants Ingwerson, Swingle, Nepomuceno, Lankford, and Sisson do not join in this argument.

In paragraph 20, plaintiff alleges that defendants McDonald and Perez refused to get involved with alleged property confiscation. The court agrees with defendants that this allegation is insufficient to establish liability for the property confiscation incident on the part of defendants McDonald and Perez. The alleged violation stems from confiscation of property. Because there is no causal connection between inaction on the part of defendants McDonald and Perez and the alleged confiscations by other defendants, their inaction is not culpable.

Similarly, in paragraph 31, plaintiff claims that defendants Plainer, Head, Spears, Quiring, McDonald, and Perez are liable because they would not get involved after plaintiff complained to them of improper confiscation of his legal mail. As with paragraph 20, these allegations are insufficient to establish supervisor liability because there is no causal link between the claimed legal mail violations and the inaction of supervisory defendants to do anything about them.

Finally, in paragraph 42 plaintiff claims that defendants Amero, Lewis, Audette, and Urquizu "stood watching and told Plaintiff to shut up when he'd cried out in pain" as another correctional officer dragged plaintiff across the floor by his ankles. As with plaintiff's allegations in paragraphs 15 and 16, the inaction alleged here shows culpability. Specifically, if true, defendants Amero, Lewis, Audette, and Urquizu may be liable for deliberate indifference to plaintiff's medical needs.

For these reasons, the court rejects defendants' argument that plaintiff fails to allege facts to support individualized constitutional claims against defendants McDonald, Perez, Plainer, Head, Quiring, Spears, Amero, Lewis, Audette, and Urquizu.[3]

/ / /

/ / /

/ / /

---

[3] For reasons discussed below, though plaintiff states a claim against these defendants, not all of his claims against them are exhausted.

## C.   __Exhaustion__

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.

The Supreme Court also held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits.  548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.  Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id. at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

/ / /

/ / /

15

1        A prison inmate in California satisfies the administrative exhaustion requirement

2  by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of

3  Regulations.  In California, inmates "may appeal any policy, decision, action, condition, or

4  omission by the department or its staff that the inmate . . . can demonstrate as having a material

5  adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

6  The inmate must submit their appeal on the proper form, and is required to identify the staff

7  member(s) involved as well as describing their involvement in the issue.  See Cal. Code Regs. tit.

8  15, § 3084.2(a).  These regulations require the prisoner to proceed through three levels of appeal.

9  See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7.  A decision at the third formal level,

10  which is also referred to as the director's level, is not appealable and concludes a prisoner's

11  departmental administrative remedy.  See id.  Departmental appeals coordinators may reject a

12  prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive

13  appeals, use of improper language, failure to attach supporting documents, and failure to follow

14  proper procedures.  See Cal. Code Regs. tit. 15, §§ 3084.6(b).  If an appeal is rejected, the inmate

15  is to be provided clear instructions how to cure the defects.  See Cal. Code Regs. tit. 15, §§

16  3084.5(b), 3084.6(a).  Group appeals are permitted on the proper form with each inmate clearly

17  identified, and signed by each member of the group.  See Cal. Code Regs. tit 15, § 3084.2(h).

18        In certain circumstances, the regulations make it impossible for the inmate to

19  pursue a grievance through the entire grievance process.  See Brown v. Valoff, 422 F.3d 926, 939

20  n. 11 (9th Cir. 2005).  Where a claim contained in an inmate's grievance is characterized by

21  prison officials as a "staff complaint" and processed through a separate confidential process,

22  prison officials lose any authority to act on the subject of the grievance.  See id. at 937 (citing

23  Booth, 532 U.S. at 736 n. 4).  Thus, the claim is exhausted when it is characterized as a "staff

24  complaint."  See id. at 940.  If there are separate claims in the same grievance for which further

25  administrative review could provide relief, prison regulations require that the prisoner be notified

26  that such claims must be appealed separately.  See id. at 939.  The court may presume that the

16

absence of such a notice indicates that the grievance did not present any claims which could be

appealed separate from the confidential "staff complaint" process.  See id.

Defendants argue:

> Here, Chatman submitted sixty-four appeals between July 20[08], when the events at issue began, and March 9, 2011, when he filed this lawsuit.  Forty of Chatman's appeals related to custody issues.  Twenty-four appeals related to his medical care.  Chatman exhausted sixteen of the forty custody appeals.  He also exhausted twelve of the twenty-four medical appeals.
>
> But none of Chatman's exhausted appeals addressed the retaliation or falsification of records claims against White or Hackworth found in Count Fifteen.  Nor did Chatman exhaust any timely appeals addressing the retaliation, falsification of records, or denial of medical care claims against Harvey.  All the claims against White, Hackworth, and Harvey should therefore be dismissed.
>
> Of the twenty-eight grievances Chatman exhausted, only twelve relate to the incidents and claims in the complaint.  And as to many of Chatman's claims, he did not exhaust or even begin the administrative process. . . .

Defendants submit the twelve exhausted grievances relating to the events set forth in the

amended complaint.  These grievances, and defendants' arguments related to each, are discussed

below.[4]

No. 08-02830 (Exhibit 3) – In this grievance, plaintiff claims defendants Kirkland,

Gorby, Hitchcock, and Pickens tampered with his food in July 2008 in retaliation for filing

grievances.  He adds that defendant Spears was present and did nothing, and that defendants

Plainer, Head, and Quiring encouraged the other defendants.  Defendants concede that plaintiff's

retaliation claims against defendants Kirkland, Gorby, Hitchcock, and Pickens are exhausted by

/ / /

/ / /

/ / /

---

[4]   Defendant Lankford does not join in any of these arguments.  Because he does not raise failure to exhaust as an affirmative defense in his separate motion to dismiss, the issue is waived as to claims against defendant Lankford.

17

this grievance, but argue:

> [N]owhere in this grievance does Chatman claim Spears, Plainer, Head, or Quiring acted in retaliation.  He also does not allege any conspiracy claims.  And he makes no claims against McDonald or Perez.  The Court should therefor dismiss the retaliation and conspiracy claims in count two against Plainer, Head, Quiring, McDonald, and Perez.

Initially, the court notes that, in addition to exhausting retaliation claims against defendants Kirkland, Gorby, Hitchcock, and Pickens, this grievance also exhausts claims against these defendants related to food tampering.  In any event, defendants are correct that, under California regulations, an inmate grievance is complete only as to those correctional officers named in the grievance.  Thus, this grievance cannot serve to exhaust except as to named defendants Kirkland, Gorby, Hitchcock, and Pickens.

No. 08-03321 (Exhibit 7) – In this grievance, plaintiff asserts that defendant Lowther ordered him to walk to his cell despite his inability to do so.  Plaintiff adds that, when he refused, defendants Lowther, Quiring, and Nelson lifted plaintiff and placed him in a holding cage.  According to plaintiff, defendant Nelson then body-slammed plaintiff and put his knee against plaintiff's neck while he was being shackled.  Plaintiff asserts that defendant Sisson was present and watched.  Defendants concede that this grievance exhausts excessive force claims against defendants Lowther, Quiring, Nelson, and Sisson, but argue:

> [N]owhere in the grievance does Chatman allege the named Defendants' acts were done in retaliation for filing grievances against them.  Nor does the grievance allege the Defendants falsified reports to tell a different story.  The Court should therefore dismiss the retaliation and falsified report claims in count seven against Sisson, Lowther, Nelson, and Quiring.

The court agrees.  Because the grievance does not mention retaliation or falsification of reports, it did not provide prison officials a full and fair opportunity to address those aspects of plaintiff's claims as now set forth in the amended complaint.

///

///

18

No. 08-03385 (Exhibit 8) – This grievance relates to a cell extraction which occurred on October 9, 2008.  He claims that defendants Ingwerson and Quiring allowed other correctional officers to drag him across the floor, resulting in injury to his foot.  Defendants concede that this grievance exhausts excessive force claims against defendants Ingwerson and Quiring, but argue:

> [G]rievance 08-03385 does not allege or give notice of any deliberate indifference claims.  In addition, although Chatman requested Ingwerson and Quiring to be fired for "retaliatory practices," he did not allege any retaliation occurred in this incident.  The Court should therefore dismiss the deliberate indifference and retaliation claims in count six against Ingwerson, Quiring, Nelson, and Pickens.

The court agrees with defendants that this grievance only exhausts claims as to those defendants named in the grievance – defendants Ingwerson and Quiring.  The court does not, however, agree with defendants that the grievance fails to provide notice of a retaliation claim.  As defendants acknowledge, plaintiff asserts in the grievance that defendants Ingwerson and Quiring acted in retaliation for exercising his First Amendment rights.  Finally, the court agrees with defendants that this grievance does not provide notice to any named defendants of a "deliberate indifference" claim to the extent defendants refer to a possible claim that defendants ignored plaintiff's medical needs.  While the grievance reflects assertions relating to plaintiff's medical care, it does not link those assertions to any named individual.

No. 08-16010 (Exhibit 25) – In this grievance, plaintiff asserts that defendant Clark, a prison nurse, concealed his requests for medical attention made in and around September 2008.  Defendants concede that this grievance exhausts plaintiff's deliberate indifference claim against defendant Clark relating to requests for medical care in and around September 2008.

Defendants argue that nothing in this grievance mentions falsification of records and, for this reason, any such claim against defendant Clark should be dismissed.  A review of the amended complaint, however, does not reflect that plaintiff is claiming that defendant Clark is liable for falsification of records.  The court does agree, however, with defendants that this

1   grievance cannot exhaust any retaliation claims against defendant Clark because retaliation is not

2   mentioned.[5]

3          No. 08-16423 (Exhibit 24) – In this grievance, plaintiff claims that defendant

4   Clark was deliberately indifferent to his medical needs when he instructed correctional officers to

5   drag plaintiff across the floor following the October 9, 2008, cell extraction.  Defendants concede

6   that this grievance exhausts plaintiff's deliberate indifference claim against defendant Clark

7   relating to the cell extraction, but argue that the grievance does not exhaust any retaliation claims

8   against defendant Clark because no such claim is mentioned.  The court agrees.  The court also

9   notes that, though plaintiff names defendant Davis in connection with his claim against defendant

10  Clark relating to the October 9, 2008, cell extraction, the grievance does not mention defendant

11  Davis and, as such, does not exhaust claims as to this defendant.

12         No. 09-00045 (Exhibit 4) – Plaintiff claims that defendants Ingwerson, Amero,

13  Quiring, and Head harassed him by confiscating and destroying his property in November 2008.

14  Defendants concede that plaintiff has exhausted property confiscation claims against these

15  defendants, but argue that the grievance cannot exhaust any retaliation claims because no such

16  conduct is mentioned and that the grievance cannot exhaust as to any other defendants because

17  they are not mentioned.  The court agrees with defendants' arguments that: (1) this grievance

18  exhausts only as to defendants Ingwerson, Amero, Quiring, and Head; and that (2) this grievance

19  does not exhaust as to any retaliation claims.  The court, however, notes that, in addition to

20  exhausting a due process claim related to the alleged property confiscation, this grievance also

21  exhausts plaintiff's claims against these defendants that their conduct interfered with his access

22

23              [5]      The court also notes that, though plaintiff names defendant Davis in connection
24  with his claim against defendant Clark relating to requests for medical care, the grievance does
    not mention defendant Davis and, as such, does not exhaust claims as to this unserved defendant.
25  Similarly, the court agrees with defendants' argument that defendants White and Hackworth
    should be dismissed because plaintiff did not submit any grievances relating to claims against
26  these defendants.  Defendants McDonald, Perez, and Burker should be dismissed for the same
    reason.

1    to the courts.

2          No. 09-00083 (Exhibit 9) – In this grievance, plaintiff claims that defendants

3    Head and Clark ordered him to be extracted form his cell on October 29, 2008.  He states that he

4    was unconscious and awakened to defendants Nelson and Ginder punching him in the stomach.

5    He also alleges that these defendants ignored his mobility impairments.  Defendants concede that

6    this grievance exhausts excessive force and medical care claims against defendants Head, Clark,

7    Nelson, and Ginder, but argue that no retaliation claims against these defendants are exhausted

8    because no such retaliation is mentioned in the grievance.  The court agrees.

9          No. 09-00163 (Exhibit 10) – In this grievance, plaintiff alleges that defendant

10   Kirkland "intercepted" his mail.  He also claims that defendants Hitchcock and Nelson were

11   present and did nothing.  He further claims that defendants Plainer, Head, Quiring, and Spears

12   were aware of the interception of his mail and that they condoned and encouraged the conduct

13   and further directed that plaintiff's mail be censored.  Defendants concede that this grievance

14   exhausts claims relating to interception of plaintiff's mail as against defendants Kirkland,

15   Hitchcock, Nelson, Plainer, Head, Quiring, and Spears.  The court agrees with defendants that

16   this grievance does not, however, exhaust any retaliation claims because retaliation is not

17   mentioned.

18         No. 09-00835 (Exhibit 12) – In this grievance, plaintiff asserts that defendant

19   Probst accosted him in April 2009 because he had filed a grievance against another correctional

20   officer.  He also claims that defendant Probst injured his hand when he snatched plaintiff's

21   laundry bag out of plaintiff's hand.  Defendants concede that this grievance exhausts plaintiff's

22   excessive force claim against defendant Probst, but argue:

23              [N]owhere in the grievance does Chatman allege Probst snatched
             the bag with deliberate indifference as to any medical need.  Nor does
24           Chatman allege in the grievance that Probst snatched the bag in retaliation
             for Chatman filing complaints against Probst.  The Court should therefore
25           dismiss the deliberate indifference and retaliation claims against Probst in
             count eleven.

26

1    As to defendants' argument that the court should dismiss the "deliberate

2    indifference" claim from count eleven, a review of the amended complaint reflects no such

3    claim.  Rather, plaintiff alleges in count eleven that defendant Probst used excessive force in

4    retaliation.  Turning to defendants' argument that the retaliation aspect of the claim is

5    unexhausted, the court does not agree.  According to defendants, the claim is unexhausted

6    because plaintiff does not allege that defendant Probst's conduct was motivated by grievances

7    filed against Probst, as opposed to some other correctional officer.  Defendants do not cite to any

8    authority in support of this position, and the court is aware of none.

9    No. 10-00634 (Exhibit 16) – Plaintiff alleges that defendants Fleming, Amero,

10    Brackett, Lewis, Audette, and Urquizu conducted a "raid" of the dayroom on April 26, 2010.

11    According to plaintiff, defendant Fleming stood on his back and that he was handcuffed behind

12    his back despite an injured back.   Defendants concede that this grievance exhausts excessive

13    force and deliberate indifference claims against defendants Fleming, Amero, Brackett, Lewis,

14    Audette, and Urquizu, but argue:

15          [A]lthough Chatman requested the officers be fired for retaliation
       in the "requested action" section of his grievance, he does not allege why
16          the officers retaliated against him or that it was related to his filing
       grievances. . . .
17

18    The court does not agree.  The purpose of the grievance process is to provide

19    prison officials enough notice to take appropriate action.  See Griffin v. Arpaio, 557 F.3d 1117

20    (9th Cir. 2009).  Here, as defendants acknowledge, plaintiff alleged in the grievance that the

21    listed defendants acted in retaliation, a claim sufficient to place prison officials on notice of the

22    nature of plaintiff's claim.

23    No. 10-10779 (Exhibit 36) – In this grievance, plaintiff alleges that defendants

24    Nepomuceno and Swingle conspired with defendant Medina to deny him medical care.  He also

25    claims that defendants Nepomuceno and Swingle retaliated against him by fabricating medical

26    documents.  Defendants concede that this grievance exhausts plaintiff's retaliation and medical

1   care claims against defendants Nepomuceno and Swingle[6], but argue that plaintiff's Americans

2   with Disabilities Act ("ADA") claim "in count fourteen" should be dismissed because plaintiff

3   does not mention any access barriers in the grievance.  A review of count fourteen, however,

4   does not reflect any ADA claims.

5        No. 10-12529 (Exhibit 39) – According to defendants' evidence, this is the only

6   grievance relating to defendant Harvey, a prison podiatrist, whom plaintiff claims refused to refer

7   him to see an outside specialist.  The court agrees with defendants that this grievance is

8   insufficient to exhaust any claims as against defendant Harvey because it was not completed until

9   after this action was filed.

10      **D.**    **Retaliation**

11       In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must

12  establish that he was retaliated against for exercising a constitutional right, and that the

13  retaliatory action was not related to a legitimate penological purpose, such as preserving

14  institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).

15  In meeting this standard, the prisoner must demonstrate a specific link between the alleged

16  retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th

17  Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner

18  must also show that the exercise of First Amendment rights was chilled, though not necessarily

19  silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.

20  2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner

21  plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials

22  took adverse action against the inmate; (2) the adverse action was taken because the inmate

23  engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment

24  rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes,

25

26      [6]    These claims are also exhausted as against defendant Medina, who has not been
served.

23

1    408 F.3d at 568.

2           As to the chilling effect, the Ninth Circuit in <u>Rhodes</u> observed: "If Rhodes had not

3    alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm

4    that is more than minimal will almost always have a chilling effect." <u>Id.</u> at n.11.  By way of

5    example, the court cited <u>Pratt</u> in which a retaliation claim had been decided without discussing

6    chilling.  <u>See id.</u>  This citation is somewhat confusing in that the court in <u>Pratt</u> had no reason to

7    discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate

8    penological interests.  <u>See Pratt</u>, 65 F.3d at 808-09.  Nonetheless, while the court has clearly

9    stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse

10   action "chilled the inmates exercise of his First Amendment rights," <u>id.</u> at 567-68, <u>see also</u>

11   <u>Resnick</u>, 213 F.3d at 449, the comment in <u>Rhodes</u> at footnote 11 suggests that adverse action

12   which is more than minimal satisfies this element.  Thus, if this reading of <u>Rhodes</u> is correct, the

13   chilling effect element is essentially subsumed by adverse action.

14          Defendants argue that plaintiff has failed to state retaliation claims against any

15   defendant because: (1) plaintiff has not alleged that his First Amendment rights were chilled; and

16   (2) plaintiff has not alleged that defendants' conduct served no legitimate penological purpose.

17   Reading the amended complaint liberally, and resolving ambiguities and doubts in plaintiff's

18   favor, the court finds that plaintiff has alleged sufficient facts to go forward with his retaliation

19   claims.  As to the chilling effect, the court concludes for the reasons discussed above that

20   plaintiff's allegations relating to the non-minimal adverse actions he suffered (i.e., confiscation

21   and destruction of his legal materials, use of excessive force, denial of medical care) are

22   sufficient to also demonstrate the required chilling effect.

23          As to whether defendants' conduct served a legitimate penological purpose, it is

24   reasonable to conclude from the entirety of plaintiff's factual allegations that defendants' conduct

25   was motivated by a desire to deprive him of his constitutional rights rather than legitimate

26   correctional goals.  While the evidence may prove the contrary, at this stage of the pleading the

                                                    24

court finds that plaintiff has alleged sufficient facts to go forward with his exhausted retaliation claims.

### E.    Medical Needs

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

1  activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

2  Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

3            The requirement of deliberate indifference is less stringent in medical needs cases

4  than in other Eighth Amendment contexts because the responsibility to provide inmates with

5  medical care does not generally conflict with competing penological concerns.  See McGuckin,

6  974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

7  decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

8  1989).  The complete denial of medical attention may constitute deliberate indifference.  See

9  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

10  treatment, or interference with medical treatment, may also constitute deliberate indifference.

11  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

12  demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

13            Negligence in diagnosing or treating a medical condition does not, however, give

14  rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

15  difference of opinion between the prisoner and medical providers concerning the appropriate

16  course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

17  90 F.3d 330, 332 (9th Cir. 1996).

18            Defendant Lankford argues:

19            Here, Chatman was seen by Dr. Lankford on one occasion for his
         foot.  Dr. Lankford interviewed Chatman and made a medical
20         determination that he did not have any injury.  Chatman's allegations show
         Dr. Lankford decided not to provide medical treatment because in his
21         opinion no treatment was necessary.  This does not amount to deliberate
         indifference. . . . [¶] At most, Chatman's allegations demonstrate his
22         disagreement with Dr. Lankford's medical opinion. . . .

23  The court does not agree.  At paragraph 55 of the amended complaint, plaintiff alleges that

24  defendant Lankford falsified the medical record to reflect that plaintiff had no foot injury when in

25  fact he did.  Thus, it is the falsification of records that is itself the affirmative conduct which

26  plaintiff alleges demonstrates defendant Lankford's deliberate indifference to his medical care.

While the evidence may establish that, in fact, plaintiff did not have any serious medical condition related to his foot and that documentation prepared by defendant Lankford to that effect is accurate, that is a question of proof not pleading.  At this stage, where plaintiff's allegations must be construed liberally, the court finds that plaintiff has stated adequate facts to proceed with an Eighth Amendment medical care claim against defendant Lankford.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.     Defendants' motions to dismiss (Docs. 27 and 38) be granted in part and denied in part;

2.     Defendants McDonald, Perez, Burke, Davis, White, Harvey, and Hackworth be dismissed;

3.     All conspiracy claims be dismissed without leave to amend; and

4.     This action proceed on the first amended complaint against the remaining defendants on the following exhausted claims:

• All claims against defendant Lankford;

• Eighth Amendment and First Amendment retaliation claims against defendants Kirkland, Gorby, Hitchcock, and Pickens related to the alleged July 2008 food tampering;

• Eighth Amendment claims against defendants Lowther, Quiring, Nelson, and Sisson related to alleged excessive force used on October 27, 2008;

• Eighth Amendment excessive force and First Amendment retaliation claims against defendants Ingwerson and Quiring related to the October 9, 2008, cell extraction;

• Eighth Amendment medical care claims against defendant Clark related to requests for medical care in or around September 2008 and the October 9, 2008, cell extraction;

• Due process property and First Amendment access-to-the-courts claims against defendants Ingwerson, Amero, Quiring, and Head related to alleged property confiscation in November 2008;

• Eighth Amendment excessive force and medical care claims against defendants Head, Clark, Nelson, and Ginder relating to the October 29, 2008, cell extraction;

• First Amendment access-to-the-courts claims against defendants Kirkland, Hitchcock, Nelson, Plainer, Head, Quiring, and Spears related to plaintiff's mail;

• Eighth Amendment excessive force and First Amendment retaliation claims against defendant Probst relating to the alleged assault in April 2009;

• Eighth Amendment excessive force and medical care and First Amendment retaliation claims against defendants Fleming, Amero, Brackett, Lewis, Audette, and Urquizu relating to the dayroom raid on April 26, 2010; and

• Eighth Amendment medical care and First Amendment retaliation claims against that defendants Nepomuceno, Swingle, and Medina related to fabrication of medical records.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 21, 2014

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE